IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CAROLYN J. CORNELIUS,           )
                                )
                 Plaintiff,     )
                                )
vs.                             )          Case No. 06-1361-MLB
                                )
MICHAEL J. ASTRUE,              )
Commissioner of                 )
Social Security,                )
                                )
                 Defendant.     )
_____ )


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff disability
insurance benefits and supplemental security income payments.
The matter has been fully briefed by the parties and has been
referred to this court for a recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

correct legal standards.  <u>Glenn v. Shalala</u>, 21 F.3d 983, 984
(10th Cir. 1994).  Substantial evidence requires more than a
scintilla, but less than a preponderance, and is satisfied by
such evidence that a reasonable mind might accept to support the
conclusion.  The determination of whether substantial evidence
supports the Commissioner's decision is not simply a quantitative
exercise, for evidence is not substantial if it is overwhelmed by
other evidence or if it really constitutes mere conclusion.  <u>Ray
v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court
is not to reweigh the evidence, the findings of the Commissioner
will not be mechanically accepted.  Nor will the findings be
affirmed by isolating facts and labeling them substantial
evidence, as the court must scrutinize the entire record in
determining whether the Commissioner's conclusions are rational.
<u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The
court should examine the record as a whole, including whatever in
the record fairly detracts from the weight of the Commissioner's
decision and, on that basis, determine if the substantiality of
the evidence test has been met.  <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be
determined to be under a disability only if the claimant can
establish that they have a physical or mental impairment expected
to result in death or last for a continuous period of twelve
months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

## II.  History of case

On April 25, 2005, administrative law judge (ALJ) Michael R. Dayton issued his decision (R. at 9, 13-22).  Plaintiff alleged that her disability began June 22, 2001 (R. at 13).  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date (R. at 14).  At

step two, the ALJ found that plaintiff had the following severe
impairments: diabetes and degenerative disc disease of the lumbar
spine status post laminectomy and failed back syndrome (R. at
17).  At step three, the ALJ found that plaintiff's impairments
do not meet or equal a listed impairment (R. at 17).  After
establishing plaintiff's RFC, the ALJ found at step four that
plaintiff cannot perform past relevant work (R. at 19).  At step
five, the ALJ found that plaintiff can perform other work which
exists in significant numbers.  Therefore, the ALJ concluded that
plaintiff was not disabled prior to August 1, 2003 (R. at 20).
The ALJ found that plaintiff was disabled as of August 1, 2003
(R. at 20).

## III.  Did the ALJ fail to give proper consideration to plaintiff's obesity and psychological impairments?

Plaintiff argues that the ALJ erred by failing to consider
plaintiff's obesity along with plaintiff's other severe
impairments, and the impact of her obesity on her ability to work
(Doc. 10 at 16-17).  Medical records from March 13, 2000 and
September 25, 2001 had described plaintiff as "obese" (R. at 404,
406).  The ALJ decision did not mention the medical records
indicating that plaintiff was obese, and did not discuss whether
her obesity would have any impact on her ability to work.[1]

---

[1]The burden of proof at step two is on the plaintiff.  <u>See
Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the
claimant bears the burden of proof through step four of the

In the case of <u>Fields v. Barnhart</u>, 83 Fed. Appx. 993, 997 (10th Cir. Dec. 30, 2003), the plaintiff argued that the ALJ failed to adequately consider plaintiff's obesity and its impact on her other ailments, daily activities, and ability to work. However, the plaintiff failed to cite to any specific record evidence to show that her obesity in any way affected her ability to engage in basic work activities. The court found that the ALJ properly concluded that plaintiff's obesity was not a severe impairment. As in <u>Fields</u>, the plaintiff in this case (Cornelius) did not cite to any evidence that would indicate that plaintiff's obesity in any way affects her ability to engage in basic work activities. For this reason, the court finds that the ALJ did not err by failing to address plaintiff's obesity. <u>See</u> <u>Tolbert v. Barnhart</u>, Case No. 05-1200-MLB (Doc. 18 at 8-12), 2006 WL 4045941 at *3-4 (July 26, 2006).

---

analysis). A claimant's showing at step two that he or she has a severe impairment has been described as "de minimis." <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see</u> <u>Williams v. Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of medical severity"). A claimant need only be able to show at this level that the impairment would have more than a minimal effect on his or her ability to do basic work activities. <u>Williams</u>, 844 F.2d at 751. However, the claimant must show more than the mere presence of a condition or ailment. If the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, the impairments do not prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work. <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).

Plaintiff also argues that the ALJ erred because the medical evidence of record warranted a psychological consultative examination (Doc. 10 at 17).  The Commissioner has broad latitude in ordering consultative examinations.  Nevertheless, it is clear that, where there is a direct conflict in the medical evidence requiring resolution, or where the medical evidence in the record is inconclusive, a consultative examination is often required for proper resolution of a disability claim.  There must be present some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision requiring further investigation.  The claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists.  When the claimant has satisfied this burden in that regard, it then becomes the responsibility of the ALJ to order a consultative examination if such an examination is necessary or helpful to resolve the issue of impairment.  In a counseled case, the ALJ may ordinarily require counsel to identify the issue or issues requiring further development.  In the absence of such a request by counsel, we will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record.  Hawkins v. Chater, 113 F.3d 1162, 1166-1168 (10th Cir. 1997).

Plaintiff cited to the medical record from Dr. Smith, dated

7

September 12, 2001, in which Dr. Smith indicates that plaintiff
has decompensated emotionally, and that plaintiff was mainly
dealing with an inability to cope with the pain due to emotional
and social factors (R. at 540-541).  On September 12, 2001, Dr.
Smith indicated that plaintiff was unable to return to work at
that time (R. at 542).  Dr. Smith, in a letter to counsel dated
December 17, 2001, noted that in his most recent contact with her
she had greatly deteriorated psychologically due to her pain, and
was being seen frequently in the emergency room for treatment and
claiming she could not get out of bed (R. at 523).  Although this
was mentioned by the plaintiff in her brief Doc. 10 at 17),
plaintiff failed to mention what Dr. Smith stated at a later
point in his letter of December 17, 2001:

> In regard to her work status I feel at this
> point though we had recently written her off
> of work, just due to her major changes in
> symptoms, which appear to be mostly emotional
> and psychological, but now appear to have
> been well worked out and do not believe there
> is any major change since I wrote the
> restrictions for sedentary duty back in
> September 2000.

(R. at 523).  Thus, although Dr. Smith had found that plaintiff
was having major psychological problems in September 2001, and
could not work at that time, he indicated on December 17, 2001
that plaintiff's psychological and emotional problems had been
well worked out and he opined she could perform sedentary work.

    Plaintiff also stated that she was hospitalized on April 30,

8

2001 at Via Christi Regional Medical Center, and that the
discharge indicated a diagnosis of major depression, citing to
Exhibit 9F (Doc. 10 at 17).  However, Exhibit 9F is a medical
report from Heartland Cardiology from 1995 (R. at 3, 300-301).
Furthermore, the medical records contained in the list of
exhibits include medical records from Wesley Medical Center, but
do not list any medical records from Via Christi (R. at 3-4).

In reviewing the evidence pertaining to plaintiff's
emotional and psychological problems, Dr. Smith stated in
December 2001 that said problems were "well worked out" (R. at
523).  Plaintiff failed to cite to any medical records of
emotional or psychological problems after that date.  As noted
above, in deciding if a consultative examination is warranted,
the starting place must be the presence of objective evidence in
the record suggesting the existence of a condition which could
have a material impact on the disability decision requiring
further investigation.  Hawkins, 113 F.3d at 1167.  In light of
Dr. Smith's statement in December 2001 that plaintiff's emotional
and psychological problems were well worked out, and in the
absence of citation by the plaintiff to any medical records after
that date indicating emotional or psychological problems which
could impact plaintiff's ability to work, the court finds that
the ALJ did not err by failing to order a consultative
examination in regards to plaintiff's emotional or psychological

condition.[2]

**IV.  Did the ALJ err in his step 3 finding that plaintiff's impairments did not meet or equal listed impairment 1.04A?**

Plaintiff has the burden at step three of demonstrating, through medical evidence, that her impairments meet all of the specified medical criteria contained in a particular listing. Riddle v. Halter, 10 Fed. Appx. 665, 667 (10th Cir. March 22, 2001).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  Sullivan v. Zebley, 493 U.S. 521, 530, 110 S. Ct. 885, 891 (1990).  Because the listed impairments, if met, operate to cut off further inquiry, they should not be read expansively.  Caviness v. Apfel, 4 F. Supp.2d 813, 818 (S.D. Ind. 1998).

The ALJ is required to discuss the evidence and explain why he found that the plaintiff was not disabled at step three.  This court should not properly engage in the task of weighing evidence in disability cases.  The court's function is only to review the Commissioner's decision to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards.  In the absence of ALJ findings

---

[2]The court would also note that plaintiff's counsel did not indicate that he had requested a consultative examination.  In the absence of such a request by counsel, the court will not impose a duty on the ALJ to order a consultative examination unless the need for one is clearly established in the record. Hawkins, 113 F.3d at 1167-1168.

supported by specific weighing of the evidence, the court cannot assess whether relevant evidence adequately supports the ALJ's conclusion that the plaintiff did not meet or equal any listed impairment.  Clifton v. Chater, 79 F.3d 1007, 1009 (10th Cir. 1996).

Plaintiff argues that she equals listed impairment 1.04A (Doc. 10 at 15) and that she meets the listed impairment because the record provides objective medical evidence to meet all the requirements of the listing (Doc. 22 at 2-3).   Listed impairment 1.04A is as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis. vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1 (2007 at 455).  In addition, the introductory material in Appendix 1 for the Musculoskeletal System (Examination of the Spine) indicates the following:

> Inability to walk on the heels or toes, to squat or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(E)(1) (2007 at 452).

In the ALJ's discussion of whether plaintiff's impairments meet the criteria of a listed impairment, the ALJ found that plaintiff does not have "nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required in listing 1.04" (R. at 17). (Note: Nerve root compression is listed impairment 1.04A, spinal arachnoiditis is listed impairment 1.04B, and lumbar spinal stenosis is listed impairment 1.04C, 20 C.F.R. 404, Subpt. P. App. 1 at 455). Thus, the ALJ simply made a conclusory statement that plaintiff's impairments did not meet listed impairment 1.04A. The ALJ did not discuss the evidence in regards to any of the specific criteria of listed impairment 1.04A.

Plaintiff has the burden of proof that she either meets or equals a listed impairment at step three. Fischer-Ross v. Barnhart, 431 F.3d 729, 733 (10th Cir. 2005). One of the criteria required to meet listed impairment 1.04A is "motor loss (atrophy with associated muscle weakness or muscle weakness)." Plaintiff's initial and reply brief state the following:

> Dr. Stein noted muscle weakness in that claimant could not raise her body weight on either calf or walk on her heels.

(Doc. 10 at 16, Doc. 22 at 3). Although plaintiff did not cite to the record in support of the above statement, it appears that plaintiff is referring to Dr. Stein's report of September 25,

12

2001.  That report, in relevant part, states the following:

> I cannot get her to raise her body weight up
> adequately on either calf or walk on her
> heels well.  **On direct testing I do not find
> any definitive motor deficit.**

(R. at 405, emphasis added).  Thus, although Dr. Stein indicated

that he could not get the plaintiff to raise her body weight up

adequately on either calf or walk or her heels well, he further

stated that, based on direct testing, he did not find any

definitive motor deficit.

Dr. Henderson prepared a medical consultant's report on

November 5, 2003.  The ALJ found plaintiff to be disabled as of

August 1, 2003.  However, even after she was deemed disabled, Dr.

Henderson's report found no gross motor deficits (R. at 146), and

no obvious atrophy (R. at 145).  Dr. Henderson also found that

plaintiff had severe difficulty with heel and toe walking and

severe difficulty squatting or arising from the sitting position

(R. at 145).  As noted above, it is the inability to walk on the

heels or toes, to squat, or to arise from the squatting position,

which may be considered evidence of significant motor loss.  A

severe difficulty in performing a function is not the same as an

inability to perform that function.  Freeman v. Barnhart, Case

No. 05-1287-JTM (Doc. 16 at 6-11), 2006 WL 4059099 at *3-4 (D.

Kan. Aug. 2, 2006).  Thus, Dr. Henderson's report does not

provide evidence of significant motor loss; in fact, he found no

gross motor deficits and no obvious atrophy.  Dr. Henderson's

report is consistent with Dr. Stein's testing in September 2001
that did not find any definitive motor deficit.  Plaintiff does
not cite to any other medical evidence that would indicate that
plaintiff met the criterion of motor loss.  Plaintiff has not
only failed to provide evidence to support a finding that her
impairment meets all the criteria of listed impairment 1.04A, the
medical evidence cited to by the plaintiff indicates that
plaintiff does not meet the criterion of motor loss.  Thus,
although the ALJ did not comply with the requirements set forth
in Clifton, such noncompliance is, at most, harmless error in
light of the fact that plaintiff has failed to cite to evidence
from which a reasonable factfinder could conclude that she meets
listed impairment 1.04A.  See Seever v. Barnhart, 188 Fed. Appx.
747, 752 (10th Cir. July 12, 2006); Fischer-Ross, 431 F.3d at
733-734 (harmless error analysis is appropriate when "no
reasonable administrative factfinder, following the correct
analysis, could have resolved the factual matter in any other
way").[3]

---

[3]This court has previously held that the ALJ did not err, or
at most, engaged in harmless error, by failing to comply with the
step three findings required by Clifton when the plaintiff failed
to provide evidence that they met all of the specified criteria
of a particular listed impairment.  Wilson v. Barnhart, Case No.
04-4133-SAC (D. Kan. July 20, 2005, Doc. 14 at 23-25 & n.2); Cash
v. Barnhart, Case No. 02-1402-MLB (D. Kan., Dec. 2, 2003, Doc. 18
at 9-12); O'Neal v. Barnhart, Case No. 02-1129-JTM (D. Kan. July
17, 2003, Doc. 16 at 18-19); and Munsinger v. Barnhart, Case No.
01-1332-MLB (D. Kan., report and recommendation filed July 22,
2002 at 16-17; affirmed on August 26, 2002).

The ALJ's discussion of whether plaintiff's impairments
equaled a listing is as follows:

> In determining equivalency, **the Regulations
> limit the undersigned to considering medical
> facts alone** (20 CFR §§404.1526(b) and
> 4l6.926(b)). Listing criteria are considered
> to indicate a degree of impairment as will
> preclude a person from engaging in "any
> gainful activity (20 CFR §§404.1525 and
> 416.925). No treating or lower level
> evaluating source has posited that the above
> non-listing level findings, either in
> combination or in light of other non-listed
> medical indic[a]tors, impose a level of
> debilitation which meets or equals any of
> those specified, Therefore, the opinions of
> the state agency medical consultants are
> given significant weight and claimant is not
> disabled due to meeting or equaling medical
> decisional criteria alone (20 CFR
> §§404.1527(f) and 416.927(f). Social Security
> Ruling 96-6p).

(R. at 17).

Effective March 31, 2006, the defendant revised 20 C.F.R. §
404.1526.  In the explanation of why the defendant was revising
its evidentiary requirements for making findings about medical
equivalence, the following was stated:

> **In addition, we are making minor revisions to
> the language in our rules on medical
> equivalence to clarify that we consider all
> information that is relevant to our finding
> about whether your impairment(s) medically
> equals the criteria of a listing.** In Hickman
> v. Apfel, 187 F.3d 683 (7th Cir. 1999), the
> Court of Appeals interpreted our statement in
> prior § 416.926(b) that "[w]e will always
> base our decision about whether your
> impairment(s) is medically equal to a listed
> impairment on medical evidence only"

differently from what we intended. The
Hickman court held that this provision meant
that we could use evidence only from medical
sources when we made findings about medical
equivalence. **However, we intended the phrase
"medical evidence only" in the prior
regulation section only to exclude
consideration of the vocational factors of
age, education, and work experience, as
defined in a number of our other regulations.**
See, for example, §§ 404.1501(g), 404.1505,
404.1520(g), 404.1560(c)(1), 416.901(j),
416.905, 416.920(g), and 416.960(c)(1) of our
regulations. **Under our interpretation of our
regulations, the phrase "medical evidence"
included not just findings reported by
medical sources but other information about
your medical condition(s) and its effects,
including your own description of your
impairment(s).**
The Hickman court believed that when we
amended the regulations in 1997 to add §
416.926(b) we added a rule that "explicitly
eliminates any recourse to non-medical
evidence." Hickman, 187 F.3d at 688. However,
as we have already noted in the above quotes
from the preamble to the 1997 interim final
regulations, we stated in that preamble that
this was not our intent. Thus, the court's
decision interpreted the language of our
regulations more narrowly than we intended...

We are now revising §§ 404.1526 and 416.926
to clarify our longstanding interpretation of
the regulations in response to the Hickman
decision.

71 Federal Register 10419 at 10421, 2006 WL 467856 (March 1,

2006, emphasis added).

    On the date of the ALJ's decision (April 25, 2005), 20

C.F.R. §§ 404.1526(b) and 416.926(b) stated that a determination

of medical equivalence will be based on medical evidence only (20

C.F.R. Parts 400 to 499, 2005 at 372, 865).  That language has
been omitted from the regulations effective March 31, 2006.  20
C.F.R. §§ 404.1526(b), 416.926(b) (20 C.F.R. Parts 400 to 499,
2006 at 373, 921).  The ALJ stated that, in determining
equivalency, the regulations limited him to considering medical
facts only.  However, defendant clearly indicated when revising
these regulations in 2006 that he intended the phrase "medical
evidence only" in the prior regulation only to exclude
consideration of vocational factors of age, education, and work
experience.  The defendant also intended that the phrase medical
evidence included not just findings reported by medical sources
but other information about a claimant's medical condition and
its effects, including the claimant's own description of his or
her impairment.  Thus, the ALJ decided this case inconsistent
with the intent of the Commissioner.

In light of the fact that the ALJ did not interpret the
regulations in effect at the time of this decision in accordance
with the intent of the Commissioner, this case shall be remanded
in order for the ALJ to make a determination of whether
plaintiff's impairment equals listed impairment 1.04A in
accordance with the regulations as interpreted by the
Commissioner.[4]

---

[4]In accordance with 71 Fed. Reg. 10419 at 10421, this
court's review of the Commissioner's final decision was made in
accordance with the rules in effect at the time of the ALJ's

17

**V.  Did the ALJ err in his determination of an onset date of August 1, 2003?**

This case is being remanded in order to determine, as noted above, whether plaintiff's impairment equals listed impairment 1.04A.  However, the court will address the issue of the onset date in the event the ALJ finds that plaintiff's impairments do not meet or equal a listed impairment prior to August 1, 2003.

The ALJ noted that all of the medical evidence indicated an ability to sustain sedentary activities through July 2003.  Plaintiff alleges an onset date of disability of June 22, 2001.  Dr. Smith, a treating physician, stated on December 17, 2001 that plaintiff could perform sedentary work (R. at 523).  On March 1, 2002, Dr. Smith indicated that plaintiff could work subject to a 15 pound limit on lifting, and primarily sit down duties with standing and walking as tolerated (R. at 507-508).  On July 29, 2003, Dr. Dobyns, a treating physician, indicated that plaintiff could return to work with a limitation of no lifting over 15 pounds and standing/walking as tolerated (R. at 141).

The ALJ noted that when plaintiff applied for benefits in August 2003, she submitted evidence of a decline in function (R. at 18, 110).  The ALJ then noted that when Dr. Dobyns saw the plaintiff on November 6, 2003, he found that she could not work

decision.  However, upon remand, the ALJ shall apply the revised rules to this case.

18

(R. at 18, 702-703, 140).  Based on the above evidence indicating that plaintiff could work as late as July 29, 2003, the ALJ found that the onset date of plaintiff's disability was August 1, 2003 (R. at 18, 22).

Plaintiff argues that the ALJ should have called upon the services of a medical advisor to determine the onset date.  Where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor.  <u>Blea v. Barnhart</u>, 466 F.3d 903, 911 (10th Cir. 2006); <u>Reid v. Chater</u>, 71 F.3d 372, 374 (10th Cir. 1995).

As noted above, the ALJ discussed the medical evidence and plaintiff's statements in assessing the onset date of plaintiff's disability.  Plaintiff's own treating physicians opined that plaintiff could perform sedentary work as late as July 29, 2003. The ALJ relied on plaintiff's indications of a worsening of symptoms since she filed her claim in August 2003, and medical opinions of disability in November and December 2003 to set an onset date of August 1, 2003.  Inferring an onset date earlier than August 1, 2003 would be inconsistent with the medical evidence of record.  Therefore, the ALJ's failure to call a medical advisor was not error.  <u>See</u> <u>Rudde v. Astrue</u>, 2007 WL 3302442 at *4 (10th Cir. Nov. 6, 2007).

**VI.  Did the ALJ err in his credibility analysis?**

A reviewing court does not weigh the evidence and may not

substitute its discretion for that of the agency.  Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence.  However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ cannot ignore evidence favorable to the plaintiff.  Owen v. Chater, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

When analyzing evidence of pain, the court does not require a formalistic factor-by-factor recitation of the evidence.  So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ will be deemed to have satisfied the requirements set forth in Kepler.  White v. Barnhart, 287 F.3d 903, 909 (10th Cir. 2002); Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An ALJ must therefore explain and support with substantial evidence which part(s) of claimant's testimony he did not believe and why.  McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002).  It is error for the ALJ to use standard boilerplate language which fails to set forth the specific evidence the ALJ considered in determining that a claimant's complaints were not credible.  Hardman v. Barnhart, 362 F.3d 676, 679 (10th Cir. 2004).  On the other hand, an ALJ's credibility determination which does not rest on mere

boilerplate language, but which is linked to specific findings of fact fairly derived from the record, will be affirmed by the court.  White, 287 F.3d at 909-910.

The ALJ stated in his findings that plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision (R. at 21). However, the court finds that the ALJ never indicated what parts of plaintiff's testimony he did not believe and why.  Therefore, on remand, the ALJ will be expected to make credibility findings in accordance with the above case law.  Furthermore, the ALJ will have to evaluate plaintiff's credibility when determining if her impairment equals listed impairment 1.04A because plaintiff's own description of her impairment can be considered when determining medical equivalence.  71 Fed. Reg. 10419 at 10421.

**VII.  Did the ALJ err when eliciting testimony from the vocational expert?**

At the hearing, the ALJ asked the ALJ to assume that plaintiff has the exertional and nonexertional limitations set forth in Exhibit 12F (R. at 789).  Exhibit 12F are medical records from Hillside Medical Office from 1991 through 1997, and do not contain any RFC limitations (R. at 319-353).  It is quite possible that this is an error by the transcriptionist, since it appears that the vocational expert's testimony about plaintiff's limitations is consistent with the state agency assessment

21

(exhibit 7F) which the ALJ relied on in making his RFC findings (R. at 19, 280-290, 795).  On remand, the ALJ shall review the tape of the hearing in order to determine if there was an error in the transcription of the hearing, and if so, to provide a corrected transcript.  If the transcript is not in error, the ALJ shall conduct a hearing in which he correctly states to the vocational expert his RFC findings or references the appropriate document in the record concerning plaintiff's RFC.

IT IS THEREFORE RECOMMENDED that the decision of the Commissioner be reversed, and that the case be remanded for further proceedings (sentence four remand) for the reasons set forth above.

Copies of this recommendation and report shall be provided to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule 72.1.4, the parties may serve and file written objections to the recommendation within 10 days after being served with a copy.

Dated at Wichita, Kansas, on November 15, 2007.

s/John Thomas Reid
JOHN THOMAS REID
United States Magistrate Judge